**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

THE GRC TRUST, appearing through Jimmy Ginn,

Plaintiff,

v.

YEEZY LLC, a Delaware Limited Liability Company; KANYE WEST, as an individual and doing business as "YEEZY TECH"; TAVORIS JAVON HOLLINS, an individual; ALEXANDER KLEIN, an individual; KANO COMPUTING LIMITED; YZY, an unknown entity; and DOES 1-10,

Defendants.

Case No. 2:25-cv-08387-AJR

**ORDER GRANTING IN PART YEEZY LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND (DKT. 18.)**

## I.

## INTRODUCTION

On September 4, 2025, Plaintiff The GRC Trust, appearing through Jimmy Ginn ("Plaintiff") filed a Complaint (the "Complaint") against Defendants: (1) Yeezy LLC, a Delaware Limited Liability Company; (2) Kanye West ("Ye"), as an individual and doing business as "Yeezy Tech"; (3) Tavoris Javon Hollins, an individual; (4) Alexander Klein, an individual; (5) Kano Computing Limited; (6) YZY, an unknown entity; and (7) DOES 1 through 10. (Dkt. 1.) The Complaint

alleged two causes of action for: (1) Copyright Infringement; and (2) Vicarious and/or Contributory Copyright Infringement. (Id. at 1.) On October 21, 2025, Defendant Yeezy LLC filed a Motion to Dismiss Plaintiff's Complaint. (Dkt. 10.) However, instead of opposing the Motion to Dismiss, Plaintiff elected to file an amended complaint. (Dkt. 14.)

On October 29, 2025, Plaintiff filed a First Amended Complaint ("FAC") against Defendants alleging one cause of action for Copyright Infringement. (Dkt. 13.) On November 12, 2025, Defendant Yeezy LLC filed a Motion to Dismiss Plaintiff's FAC (the "Motion to Dismiss"). (Dkt. 18.) On November 19, 2025, Plaintiff filed an Opposition to the Motion to Dismiss the FAC (the "Opposition"). (Dkt. 19.) On November 26, 2025, Defendant Yeezy LLC filed a Reply in Support of the Motion to Dismiss (the "Reply"). (Dkt. 20.) On December 5, 2025, after reviewing the briefing on Defendant Yeezy LLC's Motion to Dismiss the FAC, the Court took the matter under submission and vacated the hearing. (Dkt. 24); see Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court GRANTS IN PART Yeezy LLC's Motion to Dismiss and DISMISSES the FAC WITH LEAVE TO AMEND.

## II.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

This action arises out of a copyright dispute. The following allegations are taken from Plaintiff's FAC. (Dkt. 13.)

Plaintiff is a Revocable Trust, appearing though duly acting trustee, Jimmy Ginn, and exists under the laws of the State of Georgia. (Id. at 2.) Plaintiff is the sole and exclusive owner of the composition to the Sam Dees song *Always Keep Your Love (Just Out Of My Reach)* ( "*Just Out Of My Reach*"), an original work registered with the U.S. Copyright Office (the "Composition" or "*Just Out Of My Reach* Composition"). (Id. at 4, 7.) The *Just Out Of My Reach* Composition was

widely distributed throughout the world since 1973. (Id. at 7.) The *Just Out Of My Reach* Composition was widely distributed on vinyl, which was the dominant media format at the time of release. (Id.) Currently, the *Just Out Of My Reach* Composition is also available on streaming platforms, including Spotify, Apple Music, Amazon, Pandora, and YouTube. (Id.)

In 2022, Defendants created the song entitled *LORD LIFT ME UP* (the "Infringing Work"). (Id. at 4.) In creating the Infringing Work, Defendants "sampl[ed]" the *Just Out Of My Reach* sound recording, which embodied the *Just Out Of My Reach* Composition, through direct extraction and reproduction. (Id. at 7.) The sample of the *Just Out Of My Reach* sound recording, which embodied the *Just Out Of My Reach* Composition, is prominently incorporated throughout the mix of the Infringing Work. (Id. at 5.) The primary rhythm of the Infringing Work is comprised of a reproduction and/or verbatim copy of substantial elements from the *Just Out Of My Reach* Composition. (Id. at 5.) The Infringing Work composition is substantially comprised of the *Just Out Of My Reach* Composition and is either a verbatim copy or encompassed and embodied in a sound recording of the *Just Out Of My Reach* Composition found in the Infringing Work. (Id.) Defendants failed to obtain the required license to use the *Just Out Of My Reach* Composition in the Infringing Work. (Id. at 7.) In failing to do so, Defendants, and each of them, infringed Plaintiff's rights by making a direct copy of the Composition and using that copy in the Infringing Work without Plaintiff's authorization or consent. (Id.)

Defendants released the Infringing Work on a device called the Stem Player, a small MP3 player that was sold in connection with Ye's self-released album *DONDA 2*. (Id. at 5.) The Stem Player was created as a collaboration between Ye, doing business as YEEZY TECH, and Kano. (Id.) Ye assisted in creating and distributing the Stem Player, which is sold as a collaboration between YEEZY TECH and Kano. (Id.) Purchasing the Stem Player was the exclusive way to listen to songs released on *DONDA 2*. (Id.) The Stem Player allowed customers to

manipulate "stems" to alter songs. (Id.) Songs from *DONDA 2*, including the Infringing Work, were predownloaded on the Stem Player, and one of the "stems" customers could manipulate included the Composition. (Id.) Accordingly, Defendants further violated Plaintiff's exclusive right to create derivatives, as guaranteed by 17 U.S.C. § 106, by allowing remixes of the *Just Out Of My Reach* Composition. (Id. at 7.)

Defendants hosted a concert associated with the release of *DONDA 2* in 2022, where songs on *DONDA 2*, including the Infringing Work, were either played or performed. (Id. at 6.) *DONDA 2* was re-released to the public and made available on music streaming services later in 2025 through Yeezy LLC and YZY. (Id.) The re-released *DONDA 2* included the Infringing Work. (Id.) Representatives for Ye acknowledged that the *Just Out Of My Reach* Composition was used in the Infringing Work without Plaintiff's authorization. (Id.) Defendants did not obtain authorization or the required license from Plaintiff to use the *Just Out Of My Reach* Composition in connection with the Infringing Work or the Stem Player. (Id. at 6-7.)

Defendants have engaged and continue to engage in the unauthorized reproduction, distribution, public performance, licensing, display, and creation of the Infringing Work. (Id. at 7-8.) Defendants continue to engage in exploitive acts including, but not limited to, distributing and broadcasting the Infringing Work on streaming platforms such as Spotify, Apple Music, Amazon, Pandora, and YouTube, and distributing the Infringing Work on the Stem Player. (Id. at 8.) The Infringing Work resulted in significant revenue and profits to Defendants, and they continue to exploit and receive monies from the Infringing Work in violation of Plaintiff's rights in the *Just Out Of My Reach* Composition. (Id. at 6-7.) As a result of Defendants' copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's rights in the Composition. (Id. at 8.)

Due to Defendants' actions, Plaintiff have suffered actual, general, and special damages in an amount to be established at trial, including but not limited to a reasonable license fee for Defendants' use of the sample. (Id.) Plaintiff is also entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringements of their rights in the Infringing Work composition in an amount to be established at trial. (Id.) Defendants' conduct was willful, reckless, and/or with knowledge, subjecting them to enhanced statutory damages, claims or costs and attorneys' fees, and/or a preclusion from deducting certain cost when calculating disgorgeable profits. (Id.)

## III.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Mashiri v. Epsten Grinnell & Howell, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).

The Court must accept as true all non-conclusory factual allegations contained in the complaint and must construe the complaint in the light most favorable to the plaintiff. See Steinle v. City & Cnty. of San Francisco, 919 F.3d 1154, 1160 (9th Cir. 2019). "Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion." Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (footnote omitted). The Court may consider "only allegations contained in the pleadings, exhibits attached to

the complaint, and matters properly subject to judicial notice." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted); Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1988) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

The Court may not dismiss a complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar, 698 F.3d at 1212 (internal quotation marks omitted); see also Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (internal quotations omitted)).

## IV.

## DISCUSSION

### A. Plaintiff Has Not Sufficiently Alleged Ownership Of The Copyright.

Yeezy LLC moves to dismiss Plaintiff's FAC on the grounds that Plaintiff fails to adequately allege ownership and registration of the *Just Out Of My Reach* Composition. (Dkt. 18-2 at 9.) To state a claim for direct copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004). Under the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). The statute also permits an owner to transfer any of the exclusive rights comprised in a copyright. See Minden Pictures, Inc. v. John Wiley & Sons, Inc., 795 F.3d 997, 1002-03 (9th Cir. 2015). "[A]ny

party to whom such a right has been transferred—whether via assignment or an exclusive license—has standing to bring an infringement action based on that right." Id. at 1003 (citation omitted).

Here, the FAC alleges that Plaintiff owns the composition of the Sam Dees song *Just Out Of My Reach* and that the Composition is registered with the U.S. Copyright Office. (Dkt. 13 at 4.) Yeezy LLC argues that because "Plaintiff is attributing the original authorship of the Composition to another person – Sam Dees – there is an inference that Sam Dees is the owner of the copyright." (Dkt. 18-2 at 10.) Indeed, the Report on the Filing or Determination of an Action or Appeal Regarding a Copyright AO 121 Form identifies "Sam Dees, et al." as the authors of the Composition. (Dkt. 4 at 1.) Accordingly, Yeezy LLC contends that Plaintiff must plead sufficient facts showing a transfer of ownership or rights. (Dkt. 18-2 at 10.)

As an initial matter, courts generally accept conclusory allegations of ownership at the pleading stage of a copyright action. See, e.g., Star Fabrics Inc. v. Norm Thompson Outfitters, LLC, 2019 WL 6894528, at *2 (C.D. Cal. July 10, 2019) ("[C]ourts have repeatedly held that at the pleading stage, a plaintiff's mere allegation of ownership is sufficient to state a claim and that a detailed pleading concerning how the plaintiff acquired ownership is not necessary." (internal quotation marks omitted)); Hybrid Promotions, LLC v. Zaslavsky, 2016 WL 10988656, at *8 (C.D. Cal. Oct. 5, 2016) (collecting cases). However, conclusory allegations of ownership may not be sufficient at the pleading stage where another allegation or evidence calls the allegation of ownership into question, such as where the plaintiff is not the author of the work. See, e.g., FEI Holdings, Inc. v. LACDCS P'ship, 2010 WL 11597629, at *3 (C.D. Cal. Mar. 30, 2010) ("In light of its concession that [a third party] authored the copyright, Plaintiff's general allegation that it owns the copyright is insufficient."); see also In re Napster, Inc. Copyright Litig., 191 F. Supp. 2d 1087, 1101 (N.D. Cal. 2002) ("The existence of a copyright

certificate with someone else's name on it does not vest anyone other than the author with rights to the work. In order to show ownership, plaintiffs need to produce chain of title from the listed author to themselves.").

Thus, courts have required plaintiffs who are not the authors of an asserted work to allege at the pleading stage the chain of title to support a plausible inference of ownership of the copyright. See, e.g., Jim Marshall Photography, LLC v. John Varvatos of California, 2013 WL 3339048, at *8 (N.D. Cal. June 28, 2013) ("Even at the pleading stage, a plaintiff bears the burden of alleging adequate facts to support a claim of equitable ownership of copyrights. Numerous courts have dismissed complaints arising under the 1909 Act where plaintiffs have failed to adequately plead facts supporting that conclusion with particularity."); Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors, 983 F. Supp. 1167, 1173 (N.D. Ill. 1997) ("However, Plaintiff's claim that he transferred a copyright in the Composition in 2003 fails to raise a plausible inference of ownership because he has alleged no facts to explain how or when either Aopa or SGP transferred its copyright in the Composition to Plaintiff such that he had a copyright to transfer through the Windswept Agreement in the first place.").

Here, Plaintiff does not appear to actually allege ownership of the copyright. (Dkt. 13 at 4.) Instead, Plaintiff alleges ownership of the Composition and that the Composition is registered with the U.S. Copyright Office. (Id.) Plaintiff also alleges that the author of the Composition is a third-party, Sam Dees. (Id.) Under these circumstances, the Court concludes that Plaintiff has not plausibly alleged ownership of the copyright to the Composition. Thus, the FAC must be dismissed with leave to amend.

## B. Plaintiff Fails To Plausibly Allege Copying Of Constituent Elements Of The Composition That Are Original.

Yeezy LLC further moves to dismiss Plaintiff's FAC on the grounds that Plaintiff fails to adequately allege that Defendants copied protected aspects of the

Composition. (Dkt. 18-2 at 10-18.) "The second prong of the infringement analysis contains two separate components: copying and unlawful appropriation." Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin, 952 F.3d 1051, 1064 (9th Cir. 2020) (internal quotation marks omitted). In the absence of direct evidence of copying, a plaintiff "can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018) (citations omitted). By demonstrating this type of probative or striking similarity, a plaintiff "shows that the similarities between the two works are due to copying rather than … coincidence, independent creation, or prior common source." Skidmore, 952 F.3d at 1064 (internal quotation marks omitted). "A finding of such similarity may be based on the overlap of unprotectable as well as protectable elements." Id.

"On the other hand, the hallmark of unlawful appropriation is that the works share *substantial* similarities." Id. (internal quotation marks omitted). The Ninth Circuit uses a two-part test to determine whether a defendant's work is substantially similar to the plaintiff's copyrighted work. Id. "The first part, the extrinsic test, compares the objective similarities of specific expressive elements in the two works. Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." Id. (internal quotation marks and citation omitted). In other words, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003). Significantly, "the extrinsic test's application may be decided by the court as a matter of law . . . ." Rentmeester, 883 F.3d at 1118. "The second part, the intrinsic test, tests for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance." Skidmore, 952 F.3d at 1064

(internal quotation marks and brackets omitted). On a motion to dismiss, the extrinsic test is the only relevant test, as the intrinsic test is reserved exclusively for the trier of fact. Rentmeester, 883 F.3d at 1118.

Yeezy LLC argues that Plaintiff's infringement claim fails because: (1) Plaintiff alleges ownership of a music composition yet claims infringement of a sound recording, (Dkt. 18-2 at 14-15); (2) Plaintiff fails to adequately allege protectable elements of the Composition, (id. at 17-18); and (3) Plaintiff fails to allege causation as to Yeezy LLC. (Id. at 18). Because Yeezy LLC does not dispute access, the Court does not address that issue below.

**1. Identification of Infringing Conduct.**

Yeezy LLC argues that Plaintiff's infringement claim fails because Plaintiff alleges ownership of a music composition, yet claims infringement of a sound recording. (Dkt. 18-2 at 10.) "Sound recordings and their underlying compositions are separate works with their own distinct copyrights." Newton v. Diamond, 388 F.3d 1189, 1191 (9th Cir. 2004). While "the author of a musical composition is generally the composer, and the lyricist, if any, the author of a sound recording is the performer(s) whose performance is fixed, or the record producer who processes the sound and fixes them in the final recording, or both." In re Cellco P'ship, 663 F. Supp. 2d 363, 369 (S.D.N.Y. 2009) (internal quotation marks and brackets omitted). "Sound recordings are 'derivative' works of the preexisting composition, and to obtain a copyright in a sound recording one must secure a license from the copyright owner of the underlying work." Id. at n.6.

The court in Browne v. Donalds, recently addressed an argument similar to the argument Yeezy LLC makes in this case. See Browne v. Donalds, 2024 WL 3468898, at *18 (C.D. Cal. May 28, 2024). In Browne, the plaintiffs alleged that they owned registered copyrights of both the sound recording and composition in an instrumental song entitled *Fish Market*. Id. at 2. The plaintiffs in Browne asserted that the moving defendants' infringing work either "'copied composition' meaning

it infringed the copyright in the *Fish Market* composition or contains a 'sample that copies composition and copied composition' meaning it contains a sample infringing the copyright in the sound recording of *Fish Market*, and copied the composition of *Fish Market*." Id. at 18 (brackets omitted). The moving defendants argued that the plaintiffs failed to specify whether the defendants' work infringed the plaintiffs' copyrights in musical compositions or sound recordings. Id.

The court in Browne found that although plaintiffs' pleading was inartfully pled, it sufficiently "distinguish[ed] between the infringement of a musical composition copyright and a sound recording copyright." Id. The Browne court explained that the plaintiffs "alleged that *Fish Market* [was] the progenitor of the derivative works . . . and, in turn, trace all the allegedly infringing songs to *Fish Market* – particularly rhythmic elements from the *Fish Market* composition – and generally claim[ed] that the primary rhythm or drum section of [d]efendants' songs copie[d] *Fish Market*." Id. (internal quotation marks omitted). When the Browne court construed the allegations in plaintiffs' favor, the court found that the plaintiffs sufficiently pled "that a [d]efendant either copied a derivative work and thus indirectly copied the *Fish Market* composition, or directly copied the *Fish Market* composition, or interpolated [a derivate work of *Fish Market*]." Id.

Like in Browne, Plaintiff alleges in the FAC that Defendants either copied a derivative work (*i.e.*, sampling the *Just Out Of My Reach* sound recording), and thus indirectly copied the *Just Out Of My Reach* Composition, or directly copied the *Just Out Of My Reach* Composition. (See Dkt. 13 at 5 ("The composition of the Infringing work is substantially comprised of the [*Just Out Of My Reach*] Composition and is either a verbatim copy or encompassed and embodied in an audio sample of the Composition found in the Infringing Work.").) Nowhere in Plaintiff's FAC does Plaintiff allege ownership or infringement of the *Just Out Of My Reach* sound recording. (See generally Dkt. 13.) Instead, Plaintiff specifically alleges that the "Defendants, and each of them, infringed on [Plaintiff's] rights by

making a direct copy of the Composition and using that copy in the Infringing Work without [Plaintiff's] authorization or consent." (Id. at 7.) Accordingly, the Court concludes that Plaintiff has sufficiently alleged infringement of the Composition.

Yeezy LLC argues that Browne is distinguishable because the plaintiffs had copyrights in both the *Fish Market* composition and sound recording. (Dkt. 20 at 7-8.) However, this distinction does not make Browne any less persuasive. The Browne court did not conclude that plaintiffs' pleading distinguished between the infringement of a musical composition copyright and a sound recording copyright because the plaintiffs owned copyrights to both. See Browne, 2024 WL 3468898, at *18. Instead, the court in Browne found that the plaintiffs had sufficiently alleged infringement of a composition, notwithstanding the plaintiffs' allegation that copying of the *Fish Market* sound recording copied the *Fish Market* composition. Id. Thus, the Court concludes that Browne is sufficiently analogous to the claims here and supports the conclusion that Plaintiff has sufficiently alleged infringement of the Composition.

**2. Substantial Similarity.**

Yeezy LLC alternatively argues that Plaintiff's infringement claim fails to identify or describe what elements of the Infringing Work are substantially similar to the *Just Out Of My Reach* Composition. (Dkt. 18-2 at 13-14.) The Court agrees. "In order to plausibly allege striking or substantial similarity, a plaintiff can describe the work's protectable elements and identify those same elements in the defendant's work." Johnson v. Maraj, 2023 WL 8883316, at *3 (C.D. Cal. Dec. 15, 2023) (internal quotation marks omitted); see also L ALD LLC v. Gray, 2025 WL 2210401, at *4 (S.D. Cal. Aug. 4, 2025) ("To allege unlawful appropriation, Plaintiff must plead facts showing that the works share substantial similarities."). "When analyzing the similarity of musical compositions under the extrinsic test, a variety of compositional elements may be considered, including melody, harmony, rhythm, timbre, structure, instrumentation, meter, tempo, and lyrics." Batts v.

Adams, 2011 WL 13217923, at *4 (C.D. Cal. Feb. 8, 2011). However, "[b]ecause the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential [for the district court] to distinguish between the protected and unprotected material in a plaintiff's work." Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004).

Here, Plaintiff does not allege any protectable elements of the *Just Out Of My Reach* Composition. (See generally Dkt. 13.) Nor does Plaintiff make any effort to compare copyrightable elements of the Composition to the Infringing Work. (Id.) Rather, Plaintiff's FAC merely contains conclusory allegations that "[t]he primary rhythm of the Infringing Work is comprised of a reproduction and/or verbatim copy of substantial elements from the Composition[,]" and that "[t]he composition of the Infringing Work is substantially comprised of the [*Just Out Of My Reach*] Composition and is either a verbatim copy or encompassed and embodied in an audio sample of the [*Just Out Of My Reach*] Composition found in the Infringing Work. (Id. at 5.) Even when construing the allegations in the light most favorable to Plaintiff, it is unclear what Plaintiff is alleging are the protectable elements of *the* Composition.

Thus, the Court concludes that the FAC fails to sufficiently plead the second element of a direct copyright infringement claim. In Plaintiff's amended pleading, "Plaintiff is advised to specifically . . . identify what *protectable* elements of [the] copyrighted works were copied unlawfully by defendants." Siegler v. Sorrento Therapeutics, Inc., 2019 WL 581719, at *9 (S.D. Cal. Feb. 13, 2019).

**3. Causation.**

Yeezy LLC next argues that Plaintiff's direct infringement claim against it fails because "Plaintiff only alleges that Yeezy LLC is a publisher of the Infringing Work[,]" and that this kind of involvement can only give rise to a claim of indirect copyright infringement. (Dkt. 18-2 at 14 (internal quotation marks omitted).) The Court disagrees. The "volitional-conduct" requirement Yeezy LLC relies on "is not

at issue in most direct-infringement cases." Am. Broad. Companies, Inc. v. Aereo, Inc., 573 U.S. 431, 454 (2014) (Scalia, A., dissenting). However, "it comes right to the fore when a direct-infringement claim is lodged against a defendant who does nothing more than operate an automated, user-controlled system." Id. Such a defendant is not alleged in Plaintiff's FAC. (See generally Dkt. 13.)

Yeezy LLC's argument ignores Plaintiff's allegation that it "has exploited (including but not limited to offering for sale or download physical or digital copies, selling copies, reproducing, distributing, preparing derivative works, publicly performing, streaming, and/or authorizing or licensing any/all of the foregoing) the Infringing Work, as well as earned, collected, and/or distributed revenues and profits generated in connection with the exploitation of the Infringing Work." (See Dkt. 13 at 2.) Thus, the Court concludes that Plaintiff's FAC alleges direct acts of copyright infringement against Yeezy LLC pursuant to 17 U.S.C. § 106(1)-(4).

**C. Plaintiff Fails To Plausibly Allege A Causal Nexus Supporting Plaintiff's Claim To Indirect Or Disgorgement Of Profits.**

Finally, Yeezy LLC seeks dismissal of Plaintiff's demand for indirect profits and disgorgement of profits because Plaintiff failed to allege a causal nexus between the infringement and the profits generated therefrom. (Dkt. 18-2 at 14-15.) The Copyright Act permits recovery of "actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement . . . ." 17 U.S.C. § 504(b). "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id. "Direct profits are generated by selling an infringing product while indirect profits are those that have a more attenuated nexus to the infringement." Star Fabrics, Inc. v. Target Corp., 2011 WL 13217560, at *2 (C.D. Cal. Oct. 14, 2011) (internal quotation marks omitted). Indirect profits "generally arise when an infringer uses a

copyrighted work to sell another product." Id. (internal quotation marks omitted).

The Ninth Circuit has repeatedly held that "a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered." Mackie v. Rieser, 296 F.3d 909, 914 (9th Cir. 2002). Accordingly, "a 'causal relationship' between infringement and profit is . . . an element of a claim for profits under § 504(b)." Becton, Dickinson & Co. v. Cytek Biosciences Inc., 2020 WL 1877707, at *8 (N.D. Cal. Apr. 15, 2020).

Here, the FAC alleges that Defendants "have obtained direct and indirect profits they would not otherwise have realized but for their infringement of [Plaintiff's] rights in [Plaintiff's] copyrighted Composition." (Dkt. 13 at 8.) However, the FAC does not contain any non-conclusory fact to plausibly support the inference of a casual nexus between Yeezy LLC's alleged infringement and indirect profits. For example, the FAC simply does not describe, identify, or in any way attempt to suggest what kind of indirect profit Yeezy LLC earned as a result of the alleged infringement other than profits from the direct sale of the Infringing Work. Thus, the Court concludes that the FAC fails to allege a sufficient causal nexus supporting Plaintiff's claim for indirect profits under 17 U.S.C. § 504(b).

\\

\\

\\

\\

\\

# V.

# ORDER

The Motion to Dismiss is GRANTED IN PART as set forth above and the First Amended Complaint is DISMISSSED WITH LEAVE TO AMEND. On or before **October 31, 2026**, Plaintiff shall file a Second Amended Complaint ("SAC") that attempts to remedy the identified defects.

IT IS SO ORDERED.

DATED: October 1, 2026

Joel Richlin

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE